Case No. 24-7243

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

AMANDA HOUGHTON; CHARLES DOUGLAS; SUSAN FRANKLIN,
on behalf themselves and all others similarly situated,
*Plaintiffs-Counterclaim Defendants-Appellees*,

v.

AH CAPITAL MANAGEMENT, L.L.C.; BAIN CAPITAL VENTURES, LP;
GAUNTLET NETWORKS, INC.; GEOFFREY HAYES; PARADIGM
OPERATIONS, LP; POLYCHAIN ALCHEMY, LLC
*Defendants-Counterclaimants-Appellants,*
ROBERT LESHNER,
*Defendant-Appellant,*
COMPOUND DAO,
*Defendant.*

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:22-cv-7781 (Orrick, J.)

## BRIEF OF APPELLEES

<div style="display:flex">

MICHAEL LIEBERMAN
JAMIE CROOKS
FAIRMARK PARTNERS, LLP
400 7th Street NW, Suite 304
Washington, DC 20004
michael@fairmarklaw.com
jamie@fairmarklaw.com

CHARLES GERSTEIN
JASON HARROW
GERSTEIN HARROW LLP
400 7th Street NW, Suite 304
Washington, DC 20004
charlie@gerstein-harrow.com
jason@gerstein-harrow.com

STEVEN G. SKLAVER
OLEG ELKHUNOVICH
ROHIT D. NATH
NICHOLAS N. SPEAR
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
ssklaver@susmangodfrey.com
oelkhunovich@susmangodfrey.com
rnath@susmangodfrey.com
nspear@susmangodfrey.com

TAYLOR H. WILSON, JR.
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002
twilson@susmangodfrey.com

</div>

*Attorneys for Plaintiffs-Counterclaim Defendants-Appellees*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

STATEMENT OF THE CASE.................................................................3

    I.    Factual Background and Procedural History .......................3

    II.    The District Court Denies Defendants' Motion to Compel Arbitration. ...............................................................................8

    III.    Defendants Seek This Interlocutory Appeal. .....................10

SUMMARY OF ARGUMENT ..............................................................11

STANDARD OF REVIEW ...................................................................12

ARGUMENT .........................................................................................14

    I.    Defendants Waived Any Right To Compel Arbitration. ....14

        A.    Standard for Waiver ................................................14

        B.    Judge Orrick's Finding that that Defendants Knew of their Right to Arbitrate Was Not Clearly Erroneous. ...............15

        C.    Defendants Actively Litigated Instead Of Pursuing Arbitration. ...............................................................25

    II.    Plaintiffs and Defendants Did Not "Clearly and Unmistakably" Agree That an Arbitrator Would Resolve Their Arbitrability Disputes. .........................................................................27

    III.    The District Court Correctly Held That Equitable Estoppel Does Not Apply. ..........................................................................35

        A.    Defendants Cannot Satisfy Their Equitable Estoppel Standard. .................................................................36

        B.    Defendants Also Cannot Satisfy the Correct, Non-Preempted Test for Equitable Estoppel. .....................43

CONCLUSION......................................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Michaels Stores, Inc.*,
   59 F.4th 1011 (9th Cir. 2023). ...............................................15

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009).............................................................36, 44

*Balen v. Holland Am. Line Inc.*,
   583 F.3d 647 (9th Cir. 2009) ............................................11, 13

*Blanton v. Domino's Pizza Franchising LLC*,
   962 F.3d 842 (6th Cir. 2020) ...................................................34

*BMA LLC v. HDR Glob. Trading Ltd.*,
   2021 WL 949371 (N.D. Cal. Mar. 12, 2021) .............................5

*Burnett v. Nat'l Ass'n of Realtors*,
   75 F.4th 975 (8th Cir. 2023) ....................................................34

*Chabolla v. Classpass Inc.*,
   129 F.4th 1147 (9th Cir. 2025) ................................................12

*Chuman v. Wright*,
   960 F.2d 104 (9th Cir. 1992) ...................................................10

*Citibank, N.A. v. Stok & Assocs., P.A.*,
   387 F. App'x 921 (11th Cir. 2010) ...........................................13

*Coinbase, Inc. v. Bielski*,
   599 U.S. 736 (2023)....................................................... 4, 10, 23

*Coinbase, Inc. v. Suski*,
   602 U.S. 143 (2024)...................................................27, 32, 35

*Comstock v. Humphries*,
   786 F.3d 701 (9th Cir. 2015) ...................................................18

*Contec Corp. v. Remote Sol. Co.*,
   398 F.3d 205 (2d Cir. 2005) .....................................................35

*DMS Servs., LLC v. Superior Court*,
    205 Cal. App. 4th 1346 (2012) ...........................................................41

*Donovan v. Coinbase Global, Inc.*,
    649 F. Supp. 3d 946 (N.D. Cal. 2023) ...........................................5, 31

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
    756 F.3d 1098 (8th Cir. 2014) ...........................................................34

*Faucett v. Move, Inc.*,
    2025 WL 1112935 (9th Cir. Apr. 15, 2025) ......................................33

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ..........................................................27, 28, 31

*Forby v. One Techs., L.P.*,
    13 F.4th 460 (5th Cir. 2021) ..............................................................13

*Franklin v. Cmty. Reg'l Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021) ................................................40, 41, 42

*Goldman v. KPMG, LLP*,
    173 Cal. App. 4th 209 (2009) ..............................................37, 39, 41

*Gray Holdco, Inc. v. Cassady*,
    654 F.3d 444 (3d Cir. 2011) ..............................................................12

*Guisinger v. Keystone RV Co.*,
    2024 WL 3384211 (9th Cir. July 12, 2024) ......................................41

*Herrera v. Cathay Pac. Airways Ltd.*,
    104 F.4th 702 (9th Cir. 2024) ..............................................38, 42, 45

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023) .....................................15, 24, 25, 26

*Honeywell v. Workers' Comp. Appeals Bd.*,
    105 P.3d 544 (Cal. 2005) ...................................................... 44, 45

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
    790 F.3d 1112 (10th Cir. 2015) ........................................................13

*In re Estate of Saunders*,
  745 F.3d 953 (9th Cir. 2014) ...................................................................16

*In re Intuniv Antitrust Litig.*,
  2021 WL 517386 (D. Mass. Jan. 29, 2021) .......................................23

*In re Pac. Fertility Ctr. Litig.*,
  814 F. App'x 206 (9th Cir. 2020) ................................................37, 39

*In re Tyco Int'l Ltd. Sec. Litig.*,
  422 F.3d 41 (1st Cir. 2005) ......................................................................12

*Kelly v. Pub. Util. Dist. No. 2*,
  552 F. App'x 663 (9th Cir. 2014) ........................................................26

*Kramer v. Toyota Motor Corp.*,
  705 F.3d 1122 (9th Cir. 2013) ....................................................*passim*

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*,
  626 F.3d 156 (2d Cir. 2010) ..................................................................12

*Lavigne v. Herbalife, Ltd.*,
  967 F.3d 1110 (11th Cir. 2020) .............................................................28

*Letizia v. Prudential Bache Sec., Inc.*,
  802 F.2d 1185 (9th Cir. 1986) ..............................................................22

*Long Beach v. Mansell*,
  476 P.2d 423 (1970) ..................................................................................44

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016) ......................................................14, 26

*McKay v. Ingleson*,
  558 F.3d 888 (9th Cir. 2009) ................................................................16

*MicroStrategy, Inc. v. Lauricia*,
  268 F.3d 244 (4th Cir. 2001) ................................................................12

*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) ..............................................................15, 24, 43, 45

*MouseBelt Labs Pte. Ltd. v. Armstrong*,
  674 F. Supp. 3d 728 (N.D. Cal. 2023) ................................................23

*Mundi v. Union Sec. Life Ins. Co.*,
  555 F.3d 1042 (9th Cir. 2009) ...........................................................33

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) ...........................................................40

*Newirth v. Aegis Senior Cmtys., LLC*,
  931 F.3d 935 (9th Cir. 2019) .......................................................22, 25

*Ngo v. BMW of N. Am., LLC*,
  23 F.4th 942 (9th Cir. 2022) ..............................................................41

*O'Connor v. Uber Techs., Inc.*,
  904 F.3d 1087 (9th Cir. 2018) ...........................................................13

*Pac. Fertility Cases*,
  85 Cal. App. 5th 887 (2022) ...............................................................37

*Parker v. Kearney Sch. Dist.*,
  130 F.4th 649 (8th Cir. 2025) ......................................................13, 20

*Parsittie v. Schneider Logistics, Inc.*,
  2023 WL 2629869 (C.D. Cal. Feb. 8, 2023) .....................................23

*Patterson v. Jump Trading, LLC*,
  2025 WL 215519 (9th Cir. Jan. 16, 2025) .........................................31

*Schwebke v. United Wholesale Mortg. LLC*,
  96 F.4th 971 (6th Cir. 2024) ..............................................................13

*SEC v. Rubera*,
  350 F.3d 1084 (9th Cir. 2003) ...........................................................19

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) .............................................................22

*Sosa v. Onfido, Inc.*,
  8 F.4th 631 (7th Cir. 2021) ................................................................13

*Staley v. Gilead Scis., Inc.*,
   2021 WL 4972628 (N.D. Cal. Mar. 8, 2021) ....................................31

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ........................................................................36

*Swiger v. Rosette*,
   989 F.3d 501 (6th Cir. 2021) ..........................................................34

*Thrasio, LLC v. Boosted Commerce, Inc.*,
   2022 WL 823644 (9th Cir. Mar. 18, 2022) .....................................41

*Transamerica Life Ins. Co. v. Arutyunyan*,
   93 F.4th 1136 (9th Cir. 2024) ...................................................11, 17

*Tristar Fin'l Ins. Agency, Inc. v. Equicredit Corp. of Am.*,
   97 F. App'x 462 (5th Cir. 2004) ................................................22, 23

*Underwood v. Coinbase Global, Inc.*,
   No. 21-cv-8353 (S.D.N.Y. Jan. 2, 2022) ..........................................5

*United States v. Kirilyuk*,
   29 F.4th 1128 (9th Cir. 2022) .........................................................45

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1988) ..........................................................26

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 639 (2022) ........................................................................43

*Woody v. Coinbase Global, Inc.*,
   No. 23-3584 (9th Cir. Apr. 29, 2024) .............................................18

*Young v. ByteDance Inc.*,
   700 F. Supp. 3d 808 (N.D. Cal. 2023) .......................................28, 31

*Young v. Solana Labs, Inc.*,
   2024 WL 4023087 (N.D. Cal. Sept. 3, 2024) ...........................*passim*

*Zirpoli v. Midland Funding, LLC*,
   48 F.4th 136 (3d Cir. 2022) .......................................................33, 34

**Statutes**

9 U.S.C. § 4 ......................................................................................22

9 U.S.C. § 16(a)(1) ............................................................................10

**Rules**

Fed. R. Civ. P. 26 .............................................................................10

**Other Treatises**

30 CAL. JUR. 3D ESTOPPEL AND WAIVER § 13 ................................44, 45

# INTRODUCTION

After twenty months of aggressive litigation in federal court—including a motion to dismiss on the merits, counterclaims explicitly demanding a jury trial, multiple meet-and-confers, and nearly 1,000 discovery requests—Defendants[1] invoked a supposed right to arbitrate. The District Court found that Defendants—sophisticated cryptocurrency investors and entrepreneurs—knew of their purported right to compel arbitration from the moment this case was filed, yet chose to test the waters in litigation before invoking that purported right.

That finding was not clear error: Defendants knew Plaintiffs used Coinbase; Defendants knew that Coinbase requires users to agree to arbitration; Defendants themselves have agreed to the same Coinbase arbitration clauses; and Defendants' counsel have repeatedly tried the same arbitration strategy (unsuccessfully) in other cases. Judge Orrick readily identified this textbook example of waiver by litigation conduct, observing that he "did not think the legal issues underlying defendants' motion to compel arbitration were particularly challenging" and that "plaintiffs can

---

[1] Defendants-Appellants are AH Capital Management, L.L.C. ("a16z"), Bain Capital Ventures, LP, Gauntlet Networks, Inc., Paradigm Operations, LP, Polychain Alchemy, LLC, Geoffrey Hayes, and Robert Leshner. Defendant Compound DAO, which is a general partnership in which the other Defendants are alleged to be partners, was served but has not appeared and is not a party to this appeal. For simplicity, this brief refers to Defendants-Appellants as "Defendants."

be forgiven for their belief that defendants' motion is transparently designed to delay the resolution of this case." 2-ER-19.

Instead of confronting their waiver, Defendants omit critical facts, misstate Judge Orrick's decision, and mischaracterize governing law. Defendants assert—contrary to Judge Orrick's clear factual finding—that they "*did not know* of their right to arbitrate" until Plaintiffs answered a set of requests for admission served nearly two years after the litigation began. Defs.' Br. 3, 36 n.4 (emphasis added). But Defendants do not stop there; they claim Judge Orrick "made serious errors" in a decision that was "flawed several times over" and that "broke new ground by inventing a test" about a party's discovery obligations. Defs.' Br. 1, 3. In reality, this appeal could not be more straightforward. Judge Orrick found, as a factual matter, that Defendants knew about their purported arbitration rights when Plaintiffs filed their first Complaint. Defendants then litigated this case for twenty months with that knowledge. That is waiver. Defendants cannot escape the consequences of their actions by pretending that Judge Orrick's factual finding does not exist.

Affirming the District Court's waiver ruling will resolve this appeal in its entirety. If the Court reaches the remaining issues, Defendants' arguments on delegation and equitable estoppel also fail. Defendants cannot compel Plaintiffs to arbitrate the question of arbitrability because the arbitration provision of the Coinbase User Agreement (the "User Agreement"), by its express terms, applies only to disputes "BETWEEN YOU AND COINBASE," not disputes with

unaffiliated third parties like the Defendants. Nor can Defendants invoke equitable estoppel, as Plaintiffs' Securities Act claims are independent of the Coinbase User Agreement and do not rely on or reference its terms.

Arbitration is a matter of consent, not coercion. Defendants turn this principle on its head. They ask this Court to coerce Plaintiffs into arbitration based on an agreement that Defendants did not sign, that has no bearing on this lawsuit, and that by its explicit terms does not apply to third parties.

This Court should affirm the District Court's order denying Defendants' motion to compel arbitration.

## STATEMENT OF THE CASE

### I.     Factual Background and Procedural History

This is a putative class action brought by purchasers of COMP, a digital asset on the Ethereum blockchain. 1-ER-3; 2-ER-184, 2-ER-187. Plaintiffs allege that transactions in COMP are securities transactions and Defendants violated federal securities law by offering or selling COMP as an unregistered security. 1-ER-3; 2-ER-223–225. Plaintiffs filed their original complaint (the "Complaint") on December 8, 2022, alleging that Defendants violated Sections 5 and 12(a)(1) of the Securities Act of 1933. 2-ER-227–270.

The Complaint expressly alleged that each Named Plaintiff purchased COMP on the Coinbase exchange and the dates on which they did so:

15. Plaintiff Charles Douglas lives in San Ysidro, California. He purchased approximately $75 of COMP on the Coinbase exchange in January 2022 when the price was approximately $130. . . .

16. Plaintiff Amanda Houghton lives in Townsend, Delaware. She purchased approximately $3 worth of COMP in November 2022 on Coinbase when the price of COMP was approximately $42 and continues to hold that COMP. . . .

17. Plaintiff Susan Franklin lives in Bismarck, Illinois. She purchased approximately $2 worth of COMP on the Coinbase exchange on December 26, 2021, when the price of COMP was about $230 and continues to hold that COMP. . . .

2-ER-231–32. Plaintiffs' First Amended Complaint ("FAC"), filed on March 31, 2023, likewise alleged that Plaintiffs purchased COMP on Coinbase and the dates on which they did so. 2-ER-187.

At all relevant times, Coinbase required users to agree to arbitrate disputes with Coinbase. 1-ER-5 ("Defendants[] admitted in their opening brief that Coinbase had an arbitration agreement in place for over a decade."); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738-39 (2023) ("When creating a Coinbase account, individuals agree to the terms in Coinbase's User Agreement. As relevant here, the User Agreement contains an arbitration provision."). Judge Orrick found that Defendants knew about Coinbase's mandatory arbitration agreement at the time this case was filed, 1-ER-6–7, and Defendants have never denied that fact or introduced any evidence to the contrary. Documents produced in discovery, in fact, showed that

Robert Leshner and Geoffrey Hayes—named Defendants who co-founded the Compound Protocol—were long-time Coinbase users who necessarily agreed to the Coinbase User Agreement's terms. 1-SER-45–46 (Leshner); 1-SER-47–48 (Hayes).

Defendants' counsel also knew about the Coinbase User Agreement. Before this case was filed, counsel for Paradigm—the same attorney, not just the same law firm—filed a brief in *Underwood v. Coinbase Global, Inc.* stating that "[t]he Coinbase User Agreement has long included a binding arbitration clause." Br. at 2, 4, *Underwood v. Coinbase Global, Inc.*, No. 21-cv-8353 (S.D.N.Y. Jan. 2, 2022), Dkt. 30. Also before this case was filed, counsel for a16z—the same attorney, not just the same law firm—litigated a case before Judge Orrick in which he specifically discussed "the arbitration clause contained in Coinbase's User Agreement." *BMA LLC v. HDR Glob. Trading Ltd.*, 2021 WL 949371, at *16 (N.D. Cal. Mar. 12, 2021).

More broadly, Defendants' counsel have repeatedly promoted meritless equitable-estoppel theories for crypto asset purchases based on arbitration agreements with nonparties. *See, e.g.*, *Young v. Solana Labs, Inc.*, 2024 WL 4023087, at *1 (N.D. Cal. Sept. 3, 2024) (denying motion to compel arbitration by a party represented by Latham & Watkins LLP attorneys who are also counsel here); *Donovan v. Coinbase Global, Inc.*, 649 F. Supp. 3d 946, 949, 954–55 (N.D. Cal. 2023) (denying motion to compel arbitration by a party represented by a Cleary Gottlieb attorney who is also counsel here).

5

Despite knowing that Plaintiffs bought their COMP on Coinbase and that Coinbase requires users to agree to arbitration to use the Coinbase platform, Defendants vigorously litigated the case for the next twenty months. Defendants never mentioned arbitration, took full advantage of the judicial forum, and repeatedly requested that Judge Orrick resolve the case in their favor. Defendants moved to dismiss the case *on the merits*, arguing that "this lawsuit should be dismissed in full with prejudice" for failure to state a claim. 2-ER-181. After Judge Orrick denied Defendants' motion to dismiss (and subsequent motions for reconsideration filed by all Defendants), Defendants filed counterclaims against Plaintiffs based on their COMP holdings, expressly asserted that the District Court had jurisdiction over those counterclaims, demanded a jury trial on them, and asked the court to enter judgment in their favor. *See* 2-SER-335 ("a16z also demands a jury trial on all issues so triable."); 2-SER-307 ("Hayes . . . requests that the Court enter judgment on his behalf."); 1-SER-270 ("Gauntlet . . . requests that the Court enter judgment on its behalf."); 1-SER-234 ("Polychain Alchemy hereby demands a jury trial for all issues so triable."); 1-SER-186 ("Paradigm respectfully requests that the Court enter judgment on its behalf"); 1-SER-141 ("Bain hereby demands a jury trial for all issues so triable."). None of Defendants' Answers mentioned arbitration or arbitrability.

Defendants' vigorous litigation of the case included:

- Opposing the appointment of Gerstein Harrow, LLP and Fairmark Partners, LLP as lead counsel. 2-SER-454–62.

- Opposing the appointment of Susman Godfrey LLP as additional co-lead counsel. 1-SER-73–77.

- Filing an omnibus motion to dismiss for failure to state a claim. 2-SER-432–53.

- Filing seven separate motions for reconsideration of the Court's order denying the motion to dismiss. 2-SER-356–431.

- Negotiating and filing three joint Case Management Reports. 2-SER-344 (October 24, 2023); 1-SER-65 (April 30, 2024); 1-SER-53 (June 4, 2024).

- Negotiating and filing a joint Protective Order and joint ESI Protocol. 2-ER-105–06 (Protective Order); 1-SER-60–61 (ESI Protocol).

- Answering the First Amended Complaint and filing "conditional" counterclaims against the Plaintiffs. *See* 1-SER-140 (Bain); 1-SER-183–86 (Paradigm); 1-SER-231–34 (Polychain); 1-SER-262–70 (Gauntlet); 2-SER-300–07 (Hayes); 2–SER-339–42 (a16z) .

- Serving a combined 629 requests for production ("RFPs"), 29 interrogatories, and 246 requests for admission ("RFAs").

As Judge Orrick accurately explained, "This litigation conduct required plaintiffs to engage in multiple meet and confers, court appearances, and responses in support of or in opposition to the defendants' filings." 1-ER-7.

## II.   The District Court Denies Defendants' Motion to Compel Arbitration.

On August 12, 2024, Defendants jointly filed a motion to compel arbitration. 2-ER-25 ("Motion"). In the Motion, Defendants claimed—for the first time—that they had a right to enforce the arbitration agreement between Plaintiffs and non-party Coinbase under principles of equitable estoppel. *Id.*

Judge Orrick denied the Motion and, in doing so, rejected *all* of Defendants' arguments. First, Judge Orrick ruled that Defendants "waived any right to seek to compel arbitration that they might have had." 1-ER-8. Because Plaintiffs expressly alleged that they purchased their tokens on Coinbase, and because Defendants had "prior knowledge that Coinbase required users to agree to arbitration through its User Agreement," Judge Orrick made a factual determination that Defendants had knowledge of their purported right to arbitrate from the beginning of this lawsuit. 1-ER-6. Judge Orrick rejected Defendants' contention that they lacked knowledge until they received responses to their RFAs regarding the Coinbase User Agreement: "[T]hat more recent confirmation in discovery does not negate the Partner Defendants' prior knowledge." *Id.* Judge Orrick also noted, in the alternative, that even if Defendants "really needed that confirmation," they still waived their right to arbitrate by litigating the merits instead of "secur[ing] limited discovery earlier in this case." 1-ER-7. Judge Orrick further found that Defendants' extensive efforts to

8

litigate this case constituted intentional acts inconsistent with any right to arbitrate. *Id.*[2]

Judge Orrick recognized that "this holding [on waiver] is fully sufficient to DENY the motion to compel arbitration," 1-ER-8, but proceeded to also address— and reject—Defendants' delegation and equitable estoppel arguments. Judge Orrick held that Defendants did not have "clear and unmistakable evidence" that Plaintiffs agreed to delegate arbitrability disputes with non-signatories. 1-ER-9. To the contrary, the Coinbase User Agreement "contains clear-cut language showing an intent to arbitrate *disputes between the signatories only*." 1-ER-9 (emphasis added) (quoting *Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 955 (N.D. Cal. 2023)).

Judge Orrick also held that "[t]he nonsignatory [] Defendants cannot force plaintiffs into arbitration based on the Coinbase User Agreement." 1-ER-10. Applying this Court's decision in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), Judge Orrick explained that Plaintiffs' claim "is not intimately founded in or intertwined with [the Coinbase] contract," and that the court "will not need to address (much less rely on) the Coinbase User Agreement" to resolve the

---

[2] Judge Orrick also found that Defendants' conduct harmed Plaintiffs by forcing them to litigate issues in court that they would have to relitigate in arbitration, by "impos[ing] costs beyond those plaintiffs might incur in arbitration," and by allowing Defendants to "secur[e] advantages they would not have secured in arbitration." 1-ER-7–8.

case. 1-ER-10–11. Judge Orrick reasoned that although Coinbase's actions may be "relevant (under the broad definition of relevance under Federal Rule of Civil Procedure 26)," the conduct relevant to Plaintiffs' claim is not "founded in or intimately connected with the obligations of the underlying agreement." 1-ER-11.

## III. Defendants Seek This Interlocutory Appeal.

After the District Court's order, Defendants noticed this interlocutory appeal under 9 U.S.C. § 16(a)(1) and requested the automatic stay of district court proceedings under *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). 2-ER-271; 1-SER-2–4.

Plaintiffs moved for certification of the appeal as "frivolous" under *Chuman v. Wright*, 960 F.2d 104 (9th Cir. 1992), which would have allowed district court proceedings to continue notwithstanding *Bielski*. *See* 2-ER-21–22; *see also Bielski*, 599 U.S. at 745 (discussing the "process by which a district court itself may certify that an interlocutory appeal is frivolous"). Although the District Court denied the *Chuman* motion, it opined that it "did not think the legal issues underlying defendants' motion to compel arbitration were particularly challenging" and that "plaintiffs can be forgiven for their belief that defendants' motion is 'transparently designed to delay' the resolution of this case." 2-ER-19–20. Judge Orrick further stated: "I do urge the Ninth Circuit to take up defendants' appeal expeditiously and to develop a procedure to address such appeals expeditiously." 2-ER-19–20.

## SUMMARY OF ARGUMENT

The Court should affirm the District Court's determination that Defendants waived any right to arbitrate by actively litigating this case for twenty months before moving to compel arbitration. Judge Orrick found that Defendants knew about their right to arbitrate from the filing of the Complaint because the Complaint alleges that Plaintiffs purchased COMP on Coinbase and because Defendants knew that "Coinbase required users to agree to arbitration through its User Agreement." 1-ER-6. Defendants forfeited any challenge to Judge Orrick's factual findings by failing to provide any argument, let alone "sufficient argument," that the factual findings are clearly erroneous. *See Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024). Regardless, Judge Orrick's factual findings— which were premised on the factual record and his experience with the parties and the litigation—are correct, and certainly "plausible in light of the entire record." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 655 (9th Cir. 2009). These factual findings are more than sufficient to support Judge Orrick's determination that Defendants waived their right to arbitration.

Even if Defendants had not waived any right to arbitrate, the District Court correctly determined that it—not an arbitrator—should decide whether equitable estoppel applies. The Coinbase User Agreement's arbitration provision applies only to disputes "BETWEEN YOU AND COINBASE." Under this Court's decision in *Kramer v. Toyota*, 705 F.3d 1122 (9th Cir. 2013), this language precludes a finding

11

that Plaintiffs "clearly and unmistakably" agreed to arbitrate arbitrability with the non-signatory, non-Coinbase Defendants.

Finally, the District Court correctly held that equitable estoppel does not entitle Defendants to coerce Plaintiffs into arbitration. Even under the test Defendants invoke, equitable estoppel applies only when a plaintiff's claims rely on the terms of an agreement containing an arbitration clause. Here, the District Court properly recognized that it "will not need to address (much less rely on) the Coinbase User Agreement" to resolve Plaintiffs' unregistered-securities claims against Defendants. 1-ER-10–11. In any event, the state-law, arbitration-specific test for equitable estoppel that Defendants invoke is preempted by the Federal Arbitration Act ("FAA"), and Defendants cannot satisfy the proper test.

The District Court's order denying Defendants' motion to compel arbitration should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] a district court's denial of a motion to compel arbitration de novo and any underlying findings of fact for clear error." *Chabolla v. Classpass Inc.*, 129 F.4th 1147, 1153 (9th Cir. 2025). Courts routinely apply this standard when assessing whether a litigant waived arbitration rights.[3]

---

[3] *See, e.g., In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 44 (1st Cir. 2005); *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 626 F.3d 156, 159 (2d Cir. 2010); *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 450–51 (3d Cir. 2011); *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001);

"Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 655 (9th Cir. 2009) (quotations omitted). "If the district court's account of the evidence is plausible in light of the entire record," those fact findings should be deferred to, even if an appellate court "would have weighed the evidence differently." *Id.*

Defendants fail to even *mention* the clear-error standard of review in their brief. Instead, they cite *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087 (9th Cir. 2018), for the proposition that "[t]his Court reviews an order denying a motion to compel arbitration de novo." *See* Defs.' Br. 23. But Defendants omit *O'Connor*'s ***next sentence***: "[u]nderlying factual findings are reviewed for clear error." *O'Connor*, 904 F.3d at 1093 (citing *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 917 (9th Cir. 2011)).

---

*Forby v. One Techs., L.P.*, 13 F.4th 460, 464 (5th Cir. 2021); *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024); *Sosa v. Onfido, Inc.*, 8 F.4th 631, 638 (7th Cir. 2021); *Parker v. Kearney Sch. Dist.*, 130 F.4th 649, 653 (8th Cir. 2025); *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1115–16 (10th Cir. 2015); *Citibank, N.A. v. Stok & Assocs., P.A.*, 387 F. App'x 921, 923 (11th Cir. 2010).

## ARGUMENT

### I.   Defendants Waived Any Right To Compel Arbitration.

"A party may not delay seeking arbitration until after the district court rules against it in whole or in part. . . . Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party." *Martin v. Yasuda*, 829 F.3d 1118, 1128 (9th Cir. 2016). That is exactly what happened here. As Judge Orrick found, Defendants knew about their purported arbitration rights from Plaintiffs' first pleading but chose to actively litigate the merits for nearly two years before moving to compel arbitration. Those factual findings are not clearly erroneous, and Defendants do not argue otherwise. Defendants' brief ***does not even mention*** the words "clear error" or "clearly erroneous" or address why Judge Orrick's factual findings are implausible "in light of the entire record." Defendants' argument that Judge Orrick "impose[d] a novel affirmative obligation on parties seeking to compel arbitration," Defs.' Br. 31, is a strawman that mischaracterizes the District Court's ruling and is divorced from the facts of this case.

The Court should affirm Judge Orrick's determination that Defendants waived their right to arbitrate, which is dispositive of this entire appeal.

### A.   Standard for Waiver

A litigant waives a right to compel arbitration when it (1) has "knowledge of an existing right to compel arbitration" and (2) takes "intentional acts inconsistent

with that existing right." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023).[4]

Defendants' explication of the standard is incorrect and relies on abrogated cases. They say that "any party arguing waiver of arbitration bears a heavy burden," that "[w]aiver of a contractual right to arbitration is not favored," and that a court must "resolve 'any doubts' . . . 'in favor of arbitration.'" Defs.' Br. 23–24. All three statements are wrong. There is no thumb on the scale in favor of arbitration. In *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the Supreme Court clarified that courts assessing waiver "may not . . . favor arbitration over litigation" and that the FAA's policy "is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* at 418. In light of *Morgan*, this Court has confirmed that the burden on a party arguing waiver "is no longer 'heavy'" and that "there is no longer a thumb on the scale in favor of arbitration." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–16 (9th Cir. 2023).

## B. Judge Orrick's Factual Finding that that Defendants Knew of their Right to Arbitrate Was Not Clearly Erroneous.

Judge Orrick found that Defendants knew of their purported right to arbitrate from the outset of the litigation: "Defendants [had] prior knowledge that Coinbase

---

[4] The Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), eliminated a "prejudice requirement as an element from any arbitration waiver test." *Hill*, 59 F.4th at 468.

required users to agree to arbitration through its User Agreement." 1-ER-6. Judge Orrick based this factual finding on case filings, evidence Plaintiffs submitted in conjunction with their opposition to Defendants' arbitration motion, and Defendants' own admissions. 1-ER-6. Defendants fail to even argue—let alone establish—that this factual finding was clearly erroneous.

As a threshold matter, Defendants forfeited their right to challenge Judge Orrick's fact finding by failing to make *any* argument in their opening brief that it was clearly erroneous in light of the entire record. *See McKay v. Ingleson*, 558 F.3d 888, 891 n.5 (9th Cir. 2009) ("Because this argument was not raised clearly and distinctly in the opening brief, it has been waived."). Defendants' sole discussion of Judge Orrick's fact finding is in a footnote, which says nothing about clear error and states in full:

> Although the district court suggested that Defendants had "prior knowledge that Coinbase required users to agree to arbitration through its User Agreement," the court cited no evidence establishing such knowledge. Defendants, once again, are not Coinbase. And it is Plaintiffs' burden to prove waiver. In any event, knowledge that Coinbase "required users to agree to arbitration" as a general matter, does not establish knowledge of whether Plaintiffs had accepted the Agreement, or whether they had opted out at any point.

Defs.' Br. 36 n.4 (citations omitted). "Arguments raised only in footnotes . . . are generally deemed waived." *In re Estate of Saunders*, 745 F.3d 953, 962 n.8 (9th Cir. 2014). And the cursory discussion in this footnote is far from the "sufficient

16

argument in their opening brief as to why the district court's stated grounds for [its] decision were erroneous" that this Court requires to avoid forfeiture of an argument. *Transamerica*, 93 F.4th at 1146.

Even setting aside forfeiture, Judge Orrick's factual finding is not clearly erroneous. The following facts and evidence were present in the record when Judge Orrick rendered his fact finding:

- Plaintiffs alleged that they acquired COMP by using Coinbase. 2-ER-187; 2-ER-231–32.

- Defendants admitted in their joint motion that "the [Coinbase] User Agreement has contained an arbitration agreement for over a decade." 1-ER-6 & n.4.

- Defendants had in their possession and submitted with their motion "a true and correct copy of the January 31, 2022 Coinbase User Agreement, as it existed on February 21, 2022," 1-SER-50, never claiming that they learned of its existence only recently.

- Plaintiffs submitted evidence that two defendants— Robert Leshner and Geoffrey Hayes—were themselves Coinbase users who necessarily agreed to (and knew about) the Coinbase User Agreement's terms. 1-ER-6; 1-SER-45–46 (Leshner); 1-SER-47–48 (Hayes).

- Plaintiffs submitted evidence showing that "counsel for many of the [] Defendants represent other clients in different suits . . . where motions to compel arbitration based on the Coinbase User Agreement were filed in 2021 and 2022, indicating many counsel also had knowledge prior to the filing of this case." 1-ER-6 & n.5.

17

The District Court expressly relied on this evidence. 1-ER-6. Defendants' assertion that Judge Orrick "cited no evidence establishing such knowledge," Defs.' Br. 36 n.4, is simply wrong.

Regardless of the standard of review, Defendants have not produced or identified **any** evidence supporting their repeated assertions that they lacked knowledge, instead relying on conclusory attorney arguments. *See Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) ("[A]rguments in briefs are not evidence."). Defendants' brief states that Defendants did not know until Plaintiffs responded to Defendants' requests for admission "whether Plaintiffs had accepted the Agreement, or whether they had opted out at any point." Defs.' Br. 36 n.4. But the sole evidence Defendants submitted in conjunction with their motion to compel arbitration were their copies of the Coinbase User Agreement and copies of Plaintiffs' discovery responses. 2-ER-54–104. No Defendant provided a declaration stating that it lacked knowledge that Plaintiffs had accepted Coinbase's User Agreement before Plaintiffs responded to the requests for admission. Nor did Defendants provide any evidence that they believed Coinbase users could reject or opt out the arbitration clause. To the contrary, the Coinbase User Agreement Defendants submitted into the record contains no provision for opting out, *see* 2-ER-55–2-ER-84, and Coinbase has confirmed in court filings that all users must agree to arbitrate. *See* Appellees' Br. at 16–20, *Woody v. Coinbase Global, Inc.*, No. 23-3584 (9th Cir. Apr. 29, 2024).

Judge Orrick, considering the evidentiary record as a whole, expressly rejected Defendants' argument that they did know whether Plaintiffs were subject to the Coinbase User Agreement:

> The Partner Defendants contend that they did not have knowledge—despite these other admissions and sources—until July 2024 when plaintiffs admitted they agreed to the Coinbase User Agreements in their discovery responses. Declaration of Morgan E. Whitworth (Dkt. No. 169-1), Ex. 3, RFAs 7–9. But that more recent confirmation in discovery does not negate the Partner Defendants' prior knowledge that Coinbase required users to agree to arbitration through its User Agreement, as admitted in its motion and known at least to defendants Leshner and Hayes.

1-ER-6. This directly contradicts Defendants' statement in their opening brief that "there is no dispute that Defendants *did not know* of their right to arbitrate until Plaintiffs admitted during discovery that they assented to Coinbase's arbitration agreement." Defs.' Br. 3.

Judge Orrick also rejected the argument that factual circumstances akin to those in *Young v. Solana Labs, Inc.*, which held that there was insufficient evidence that the Plaintiff agreed to an arbitration agreement, were present here: "No such factual issues—*e.g.*, the existence of different channels to access Coinbase's platform and related implications for coverage by the Arbitration Agreement in the Coinbase User Agreement—are raised or argued here." 1-ER-7 n.6 (citing *Solana Labs*, 2024 WL 4023087, at *4). Judge Orrick's assessment of the evidence is plainly plausible in light of the entire record. *See SEC v. Rubera*, 350 F.3d 1084, 1093–94,

19

1096 (9th Cir. 2003) (holding that evidence in the record met clear-error standard because the district court's interpretation "was, at a minimum, plausible").[5]

This case resembles *Parker v. Kearney School District*, 130 F.4th 649, 654 (8th Cir. 2025), in which the Eighth Circuit reaffirmed a rule that a party "[knows] of its existing right to arbitrate" when it "possesse[s] the arbitration agreement," even if a party did not "[know] for certain that [an] arbitration clause would apply" until after summary judgment. The same facts are dispositive here. Plaintiffs disclosed that they acquired COMP through Coinbase. Defendants (or their counsel) possessed the Coinbase User Agreement and its arbitration provision. And Defendants knew that Coinbase users were required to agree to the User Agreement before using Coinbase's platform. The District Court found the Defendants' knowledge from this record. That is not clearly erroneous.

Rather than discussing Judge Orrick's dispositive factual findings, Defendants try to create legal error where none exists. Defendants claim that the District Court created a new legal test because "[t]he district court's waiver decision turned on its belief that Defendants had a duty to inquire about the existence of a right to compel arbitration" and therefore "imposes a novel affirmative obligation on parties seeking

---

[5] Moreover, the defendants in *Solana Labs*—unlike Defendants here—filed their motion to compel arbitration simultaneously with their motion to dismiss and requested limited discovery on their motion to compel rather than waiting two years to serve supposedly necessary discovery. *Solana Labs*, 2024 WL 4023087, at *4.

to compel arbitration." Defs.' Br. 30–36. Those assertions are incorrect and cannot be squared with the record or the law.

*First*, Judge Orrick's "waiver decision" did not "turn[] on" a "duty to investigate"; his decision turned on his factual finding that Defendants had knowledge of their right to arbitrate. Judge Orrick's statements about "limited discovery" were an alternative rationale for finding waiver, which is plain from the text of the order (which Defendants tellingly never cite): "But if the Partner Defendants really needed that confirmation, they could have secured limited discovery earlier in this case, for example, prior to general discovery opening or the meeting and conferring over a protective order and ESI protocols." 1-ER-7.

*Second*, Judge Orrick did not impose a "novel affirmative obligation on parties seeking to compel arbitration." Defendants do not dispute that they knew from the outset of this case that: (1) Plaintiffs purchased their COMP on Coinbase, (2) Coinbase requires all users to agree to the Coinbase User Agreement, and (3) the Coinbase User Agreement contains an arbitration provision. Defs.' Br. 30–36. The sole piece of information Defendants' brief claims that Defendants did not know was whether Plaintiffs would take the position that they did not accept or opted out of the Coinbase User Agreement. *Id.* at 35–36. That question, even if it were genuine, was apparent from the outset of the case. Defendants have not identified any revelations in discovery that spurred them to ask this question. Nothing prevented Defendants from serving requests about Plaintiffs' interactions with the Coinbase

User Agreement at the outset of the case, *e.g.*, by using the FAA's procedural mechanisms to obtain "discovery . . . in connection with a motion to compel arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999); *see also* 9 U.S.C. § 4.[6] Defendants simply made "an intentional decision not to compel arbitration in order to take advantage of the judicial forum." *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019). Judge Orrick's determination that Defendants waived their right by doing so is perfectly consistent with waiver law. *See id.* ("Seeking a decision on the merits of a key issue in the case indicates an intentional and strategic decision to take advantage of the judicial forum.").

*Third*, none of the cases Defendants cite remotely resemble this case. *Tristar Fin'l Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462 (5th Cir. 2004), and *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185 (9th Cir. 1986), involved litigants who lacked any awareness of a potentially applicable arbitration agreement. *See Tristar*, 97 F. App'x at 465 ("Equicredit was simply unaware of the 1999 [arbitration] agreement until it was produced in discovery[.]"); *Letizia*, 802 F.2d at 1187 (no waiver because "there was no existing right to arbitration" under existing

---

[6] Defendants note that "discovery is automatically stayed under the PSLRA during the pendency of a defendant's motion to dismiss," Defs.' Br. 29 (citing 15 U.S.C. 77z-1(b)(1)), but this automatic stay would not have prevented Defendants from seeking limited discovery before moving to dismiss on the merits, as they were obliged to do. Furthermore, Defendants' motion to dismiss was denied in September 2023, *see* 2-ER-153, and they inexplicably waited *eight more months* before serving the limited discovery they claimed they needed.

Ninth Circuit caselaw, which was overturned by an intervening Supreme Court decision). *Tristar* and *Latizia* do not address a situation where, like here, the defendant knew about the purported arbitration right from the beginning of the case. And in *Parsittie v. Schneider Logistics, Inc.*, 2023 WL 2629869, at *4 (C.D. Cal. Feb. 8, 2023), "neither [defendant] nor its counsel ever saw the relevant [arbitration] agreement." Defendants' remaining cases involve imputation of knowledge to a party by other entities. *See MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 735–36 (N.D. Cal. 2023) (rejecting argument that defendant should be charged with its agents' knowledge); *In re Intuniv Antitrust Litig.*, 2021 WL 517386, at *9–10 (D. Mass. Jan. 29, 2021) (rejecting argument that defendant should be charged with an unaffiliated entity's knowledge). All of these cases differ from Defendants' position here—a party who knew about the potentially applicable agreement from the outset of the case.

Finally, it is Defendants, not the District Court, whose approach would create a parade of horribles. In Defendants' view, a party does not "know" about its supposed right to arbitrate until it confirms in discovery that a signatory did not "opt out" of an arbitration agreement. Defendants in any case could speculate about potential defenses to arbitration that a plaintiff might raise—maybe the plaintiff will say she signed under duress, or was a minor, or was intoxicated—then serve an RFA after years of delay, move to compel arbitration, and seek an immediate interlocutory appeal and *Bielski* stay. This cannot be the law. Having "knowledge of an existing

23

right to compel arbitration," *Hill*, 59 F.4th at 468, does not require absolute certainty that a motion to compel arbitration will succeed. The District Court correctly held that speculative concerns about arbitration defenses "do[] not negate the . . . Defendants' prior knowledge." 1-ER-6.[7]

This case is illustrative. In Defendants' telling, a group of sophisticated cryptocurrency investors and entrepreneurs—represented by several of the nation's largest, most powerful law firms—had no knowledge of their purported right to arbitrate under the Coinbase User Agreement until almost two years into the case. This is true, even though Plaintiffs' lawsuit expressly alleged that they purchased COMP on Coinbase; even though the same lawyers at the same law firms invoked Coinbase's arbitration clause for other clients; even though Defendants Leshner and Hayes previously accepted the Coinbase User Agreement themselves; and even though Defendants had the Coinbase User Agreement in their possession. *See* 2-ER-55. Yet, somehow, something prompted them—years into the litigation— to serve highly specific RFAs requesting that Plaintiffs "admit" that they agreed to the Coinbase User Agreement. *See, e.g.*, 2-ER-88–92. Though nothing prevented

---

[7] Where, unlike here, there is legitimate uncertainty about the existence of a right to arbitrate, a defendant's decision to press ahead on the merits instead of using the FAA's procedural mechanisms to resolve that uncertainty could be assessed under the rubric of "forfeiture, estoppel, laches, or procedural timeliness," if not waiver. *Morgan*, 596 U.S. at 416. To the extent any of those doctrines require a showing of prejudice, the district court found that Defendants' conduct prejudiced Plaintiffs. 1-ER-7–8. That finding was correct and certainly not clearly erroneous.

24

Defendants from serving the purportedly necessary confirmative requests for admission at the outset of this litigation, Defendants claim they cannot be charged with knowledge of their right to arbitrate simply because they chose to hold off on serving those requests until after they tried their luck on the merits. That does not make sense.

The logical explanation behind Defendants' conduct is that they wanted to test the waters in federal court before invoking a meritless right to arbitration, either in hopes of a second bite at the apple or simply to delay. Defendants moved to dismiss, lost, sought reconsideration, and lost again. Only after those decisions—and extensive discovery and document productions to boot—did Defendants move to compel arbitration. This is precisely the type of forum-shopping inconsistent with a right to arbitrate that courts disallow.

### C. Defendants Actively Litigated Instead Of Pursuing Arbitration.

Defendants' conduct also meets the second prong of the waiver test: Defendants "actively litigat[ed] [their] case to take advantage of being in federal court." *Hill*, 59 F.4th at 471 (quoting *Martin*, 829 F.3d at 1125). A party "actively litigates" when it does the very things that Defendants did for nearly two years— litigating motions, filing counterclaims, negotiating stipulations, serving discovery, and otherwise participating in the normal trappings of civil litigation. *See, e.g.*, *Newirth*, 931 F.3d at 941 ("Seeking a decision on the merits of a key issue in a case

indicates an intentional and strategic decision to take advantage of the judicial forum.").

Defendants do not dispute that if their conduct is assessed from the time the District Court found they had knowledge—*i.e.*, from the start of the case—their conduct was "inconsistent with [any] existing right" to arbitrate. *Hill*, 59 F.4th at 468; *see* 1-ER-7 (District Court's recitation of Defendants' conduct); 1-SER-25–27 (Plaintiffs' arguments and authorities on this point). Defendants' only argument is that they acted promptly after Defendants received the RFA responses. Defs.' Br. 28–30. Because the District Court did not clearly err in finding that the Defendants had knowledge from the outset of this case, this argument is beside the point: Defendants' twenty months of vigorous litigation easily satisfy the test for acting inconsistently with a right to arbitrate. See 1-ER-7–8; *see also e.g.*, *Martin*, 829 F.3d at 1126, *Kelly v. Pub. Util. Dist. No. 2*, 552 F. App'x 663, 664 (9th Cir. 2014); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988).

<p style="text-align:center">*    *    *</p>

The District Court found that Defendants knew about a potential right to arbitrate under the Coinbase User Agreement but remained silent for twenty months while litigating this case in a federal forum. This fact finding was not clearly erroneous, and Defendants' conduct constitutes waiver. This Court should affirm the District Court's holding on waiver, which will resolve this appeal in its entirety.

*See* 1-ER-8 ("[T]his holding [on waiver] is fully sufficient to DENY the motion to compel arbitration.").

## II. Plaintiffs and Defendants Did Not "Clearly and Unmistakably" Agree That an Arbitrator Would Resolve Their Arbitrability Disputes.

Defendants' delegation argument—while unnecessary to decide this appeal—is equally flawed. Defendants argue that the District Court should not have decided the equitable estoppel issue because all decisions about arbitrability have been delegated to the arbitrator. Defs.' Br. 37–51. But Plaintiffs and Defendants did not agree to *anything*, much less "clearly and unmistakably" agree to arbitrate disputes about arbitrability.

"Arbitration is a matter of contract and consent." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). Accordingly, a dispute is subject to arbitration "if, and only if, the parties actually agreed to arbitrate" that dispute. *Id.* This rule applies to both merits disputes and to antecedent "arbitrability" disputes, which are disputes over whether the litigants agreed to arbitrate. *Id.* at 149. In other words, an arbitrability dispute is subject to arbitration only if the litigants specifically "agree[d] to submit the arbitrability question itself to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). In deciding that question, courts may not find that the litigants agreed "to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *Id.* at 944 (alterations omitted). This "clear and unmistakable" standard reflects the Supreme Court's insistence that arbitration is a

27

means "to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Id.* at 943.

Plaintiffs and Defendants never "clear[ly] and unmistakab[ly]" agreed that an arbitrator would resolve any arbitrability disputes between them. *See id*. The record contains no agreement of any kind between any Plaintiff and any Defendant, "which is, after all, why [Defendants are] demanding equitable estoppel." *Lavigne v. Herbalife, Ltd*., 967 F.3d 1110, 1120 n.7 (11th Cir. 2020). And because Defendants have no contractual relationship with Plaintiffs, it follows that they did not "clearly and unmistakably" agree with Plaintiffs about who decides arbitrability. As the Eleventh Circuit incisively observed, "if there is no contract, how can the issue of equitable estoppel be delegated in the first place?" *Id.*; *see also Young v. ByteDance Inc*., 700 F. Supp. 3d 808, 810 (N.D. Cal. 2023) ("It's difficult to understand how any nonparty seeking to compel arbitration on equitable estoppel grounds could ever invoke a delegation provision.").

Lacking any contract with Plaintiffs, Defendants ask the Court to find that Plaintiffs "clearly and unmistakably" agreed to arbitrate arbitrability disputes *with Defendants* by signing the Coinbase User Agreement, even though Defendants are not parties to that agreement. Defendants point to the Coinbase User Agreement's reference to the AAA Rules and other contractual language about the arbitrator's authority. *See* Defs.' Br. 39–45. But Defendants' argument skips right past the crucial question, which is not whether Plaintiffs agreed *with Coinbase* to arbitrate

arbitrability, but whether Plaintiffs, by signing the Coinbase User Agreement, agreed to arbitrate arbitrability disputes *with Defendants*. Plaintiffs did not: The agreements between Plaintiffs and Coinbase apply to disputes between users and Coinbase, not disputes between users and strangers to the agreement.

This Court rejected essentially the same argument in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013). In *Kramer*, the plaintiffs agreed to arbitrate disputes (including arbitrability disputes) with car dealerships from whom they purchased Toyotas. *Id.* at 1124–25. When the plaintiffs later sued Toyota (not the dealerships) for manufacturing defects, Toyota invoked equitable estoppel and tried to enforce the arbitration agreements between the plaintiffs and the dealerships, including with respect to arbitrability. This Court rejected Toyota's argument: "While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships." *Id.* at 1127. Toyota was not a party to or third-party beneficiary of the arbitration agreement, which stated "[e]ither you or we may choose to have any dispute between you and us decided by arbitration." *Id.* Accordingly, because "the parties to this litigation did not agree to arbitrate arbitrability," the district court in *Kramer* "had the authority to decide whether the instant dispute is arbitrable." *Id.* at 1128.

*Kramer* is controlling here. Just like in *Kramer*, "the terms of the arbitration clauses are expressly limited to Plaintiffs and [Coinbase]." *Id.* at 1127. Specifically,

the Coinbase User Agreement states that the arbitration agreement applies to "DISPUTES <u>BETWEEN YOU AND COINBASE</u>" and provides that "ALL DISPUTES <u>BETWEEN YOU AND US</u> SHALL BE RESOLVED BY BINDING ARBITRATION." 2-ER-55 (capitalization in original, underlines added). Defendants are neither the "you" nor the "Coinbase" in the phrase "you and Coinbase." For that reason alone, the Coinbase User Agreement cannot be read to provide unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with the Defendants. Indeed, the language in the Coinbase User Agreement is nearly identical to the decisive language in *Kramer*, which referred to "any dispute between you and us." 705 F.3d at 1127. In light of this express language limiting the arbitration agreement's scope to disputes between users and Coinbase, Defendants cannot show that Plaintiffs, by signing the Coinbase User Agreement, "clearly and unmistakably" agreed to arbitrate arbitrability in disputes with strangers to that contract. *See* 1-ER-9 & n.9.

Defendants try to wave away this conclusive language as "prefatory," Defs.' Br. 47, but it is part of the Coinbase User Agreement like any other provision, written prominently in bold and all-caps on the agreement's first page, under the heading "Dispute Resolution." 2-ER-55. Defendants identify no authority for ignoring the plain text of this agreement. And other provisions confirm that the Coinbase User Agreement is between users and Coinbase, not users and third parties. *See, e.g.*, 2-ER-81 ("[Y]ou and Coinbase agree . . . ."); *id.* ("YOU AND COINBASE

HEREBY WAIVE ANY . . . RIGHTS TO SUE IN COURT . . . ."); *id.* ("You and Coinbase are instead electing . . . ."); 2-ER-82 ("[Y]ou and Coinbase agree that either party shall have the right to finally resolve the Dispute through binding arbitration . . . ."). Moreover, some User Agreement provisions would make no sense if they applied to disputes between users and third parties. For example, the User Agreement states that "[t]he award of the arbitrator is final and binding *upon you and us*," 2-ER-83 (emphasis added), even though an award between users and third parties would not bind Coinbase. The User Agreement also requires that certain disputes be decided "solely on the basis of documents you and Coinbase submit to the arbitrator," 2-ER-82, which again would make no sense if the dispute was between a user and a third party.

District courts applying *Kramer* to the Coinbase User Agreement and similar user agreements have uniformly found *Kramer* controlling. *See Donovan*, 649 F. Supp. 3d at 955; *Solana Labs*, 2024 WL 4023087, at *6–7; *ByteDance*, 700 F. Supp. 3d at 811. A panel of this Court held the same. *See Patterson v. Jump Trading, LLC*, 2025 WL 215519, at *1 (9th Cir. Jan. 16, 2025).

Defendants try to distinguish *Kramer* on grounds that no court has ever accepted. *First*, Defendants argue that *Kramer* is distinguishable because it did not involve an arbitration agreement stating that the dispute would be resolved under the AAA Rules. Defs.' Br. 47. But this argument "just re-raises the same question: Disputes between whom?" *ByteDance*, 700 F. Supp. 3d at 812 n.5; *see also Staley*

31

*v. Gilead Scis., Inc.*, 2021 WL 4972628, at *4 (N.D. Cal. Mar. 8, 2021) ("*Kramer* did not turn on the narrowness or breadth of the delegation clause . . . . *Kramer* turned on the language in the arbitration provision evidencing that arbitrable disputes were disputes between 'you and us'—*i.e.*, the signatories to the agreement and not to any nonsignatory."). At most, incorporation of the AAA Rules shows that Plaintiffs agreed to arbitrate arbitrability in disputes *with Coinbase*. But Defendants have no evidence—let alone "clear and unmistakable" evidence—that Plaintiffs also agreed to arbitrate arbitrability in disputes *with Defendants*. *See Suski*, 602 U.S. at 148 ("[T]he first question in any arbitration dispute must be: What have *these* parties agreed to?" (emphasis added)).

*Second*, Defendants argue that *Kramer* is distinguishable because the arbitration provision there stated: "either you or we *may choose* to have any dispute between you and us decided by arbitration." Defs.' Br. 48 (emphasis added by Defendants). According to Defendants, this "you or we may choose" language made clear that only a signatory could elect arbitration. *Id.* This is a distinction without a difference. The User Agreement's limited application to "disputes between you and Coinbase," 2-ER-55, necessarily means that only the user or Coinbase "may choose" arbitration, because no one else could decide how a dispute between "[the user] and Coinbase" is resolved. Furthermore, *Kramer* did not base its holding on the "may choose" language; it rejected Toyota's argument "because the arbitration clause is limited to claims between 'you and us'—*i.e.* Plaintiffs and the Dealerships."

*Kramer*, 705 F.3d at 1128. Likewise here, the agreement is limited to "disputes between you and us." 2-ER-55 (emphasis and all-caps omitted); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) (no "may choose" language).

In all events, the question is not whether this case is exactly the same as *Kramer. Kramer* is not the dividing line. The question is whether there is "clear and unmistakable evidence" of an agreement to arbitrate arbitrability. *Kramer*, 705 F.3d at 1127. Defendants are nowhere close to meeting that demanding burden. *See, e.g.*, *Faucett v. Move, Inc.*, 2025 WL 1112935, at *1 (9th Cir. Apr. 15, 2025) ("At most, the arbitration provision's mandate to arbitrate 'any and all disputes relating to these Terms' is ambiguous as to its intent to bind nonsignatories; therefore, it is insufficient.").

Defendants argue that applying *Kramer* here would conflict with other circuits who have "found that nonsignatory enforcement can be delegated even when 'you and us' language is included in the agreement." Defs.' Br. 50. Defendants mischaracterize those cases and omit critical details that make them distinguishable.

For starters, Defendants' description of *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136 (3d Cir. 2022), misleadingly omits the dispositive fact that the nonsignatory was an assignee specifically included in contract's terms. *See* Defs.' Br. 50–51. The agreement encompassed disputes between "you and us," but expressly defined "us" to include the signatory's "assignees." *Zirpoli*, 48 F.4th at

33

142–43. Accordingly, *Zirpoli* held that the signatory's assignee could enforce the delegation provision. *Id.* at 143. Here, in contrast, the word "us" refers only to "Coinbase, Inc.," 2-ER-55, and, in any event, Defendants are not Coinbase's assignees.

In *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021), the plaintiff waived any challenge to the nonsignatory's ability to enforce the delegation clause because she "not once mentioned, let alone challenged, the delegation clause." Similarly, in *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845 n.1 (6th Cir. 2020), the plaintiff never challenged the non-signatory's ability to enforce the delegation clause and the Court expressly reserved the question. *See id.* ("Because that is a distinct question that is not before us, we express no views on it.").

In *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1099 (8th Cir. 2014), the contract had no "you and us" language, and in any event the non-signatory was a successor-in-interest to the signatory. Defendants here, in contrast, are distinct entities from Coinbase—not assignees or successors. Indeed, when the Eighth Circuit later addressed facts like those here—in which the non-signatory was an unrelated third-party and invoked equitable estoppel—the Eighth Circuit expressly relied on *Kramer* and held that the non-signatory could not compel arbitration of arbitrability. *Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 983–84 & n.6 (8th Cir. 2023).

Similarly, in *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205 (2d Cir. 2005), the nonsignatory was a successor-in-interest to the signatory. The Second Circuit emphasized that "just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory." *Id.* at 209. But the court found that the litigants had "a sufficient relationship to each other and to the rights created under the agreement" to allow enforcement because all that changed was the signatory's corporate form and both parties "continued to conduct themselves as subject to the [agreement] regardless of the change of corporate form." *Id.* Here, Defendants are entities and individuals unrelated to Coinbase and with no connection to the Coinbase User Agreement.

In sum, the fundamental principle of arbitration as "a matter of contract and consent" resolves this issue. *Suski*, 602 U.S. at 145. Plaintiffs' contract with Coinbase, which is expressly limited to disputes with Coinbase, is not "clear and unmistakable" evidence that Plaintiffs agreed to arbitrate arbitrability disputes with Defendants, who are not Coinbase. The District Court correctly determined that it, not an arbitrator, should decide whether equitable estoppel applies.

## III. The District Court Correctly Held That Equitable Estoppel Does Not Apply.

Defendants, as non-signatories to the Coinbase User Agreement, cannot avail themselves of that contract's arbitration clause through the doctrine of equitable estoppel. For starters, Defendants' brief applies a state-law test for equitable estoppel

35

that is preempted by the FAA because it is arbitration-specific rather than generally applicable, and Defendants cannot satisfy the proper test. *See infra* Part III.B. But the Court need not even reach the question of which test applies because Defendants do not even satisfy the preempted, arbitration-specific test they apply. Either way, the decision below should be affirmed.

## A. Defendants Cannot Satisfy Their Equitable Estoppel Standard.

The "basic precept" of the Federal Arbitration Act is that "arbitration is a matter of consent, not coercion." *Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quotations omitted). Accordingly, the contractual right to compel arbitration generally "may not be invoked by one who is not a party to the agreement." *Kramer*, 705 F.3d at 1126. The exception to that rule is when "traditional principles of state law" allow a contract to be enforced by or against a non-signatory. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Defendants rely on the state-law principle of equitable estoppel and claim that it allows them to enforce the arbitration agreement between Plaintiffs and Coinbase. Defendants are wrong: equitable estoppel does not apply because Plaintiffs' securities claims do not rely on any of the terms of the Coinbase User Agreement.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Kramer*, 705 F.3d at 1128. As its name suggests, equitable estoppel is a doctrine of fairness. *Id.* at 1133. It prevents a plaintiff from trying "to have it both ways" by

"relying on the terms of a written agreement [to] impose liability" on a non-signatory defendant while, at the same time, arguing that the non-signatory defendant may not enforce the same agreement's arbitration clause. *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220, 231 (2009). Equitable estoppel does not apply merely because a complaint "makes reference" to "an agreement containing an arbitration clause" or includes claims that "presume the existence of" such an agreement. *Id.* at 218, 231. Instead, the "necessary central core of the standard [is that] the plaintiff's allegations must rely on or depend on the terms of the written agreement." *Id.* at 231. "If the claims are fully viable without reference to the terms of the contract, equitable estoppel does not apply." *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020); *see also Goldman*, 173 Cal. App. 4th at 218.

Contrary to Defendants' misstatement of the law, this "necessary central core" applies to both prongs of California's arbitration-specific test for equitable estoppel. *Goldman*, 173 Cal. App. 4th at 218–19, 231; *Kramer*, 705 F.3d at 1132-33; *Pac. Fertility Cases*, 85 Cal. App. 5th 887, 893 (2022). Specifically, under California law, the arbitration-specific form of equitable estoppel applies in two circumstances, both of which require that plaintiff's allegations "rely on or depend on the terms of the written agreement." *Goldman*, 173 Cal. App. 4th at 231. *First*, equitable estoppel applies if "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Pac. Fertility Cases*, 85 Cal. App. 5th at 893. *Second*, equitable

estoppel applies if "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory ***and*** the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 n.5 (9th Cir. 2024) (emphasis added).[8]

*Kramer* is once again instructive. There, Toyota argued that the plaintiffs' manufacturing defect claims were "intertwined with the [vehicle dealerships'] Purchase Agreements because Plaintiffs' claims rely on the existence of Plaintiffs' vehicle purchase transactions." *Kramer*, 705 F.3d at 1130. This Court rejected that argument. Even though the plaintiffs purchased the vehicles pursuant to Purchase Agreements containing an arbitration agreement, they "[did] not seek to enforce or challenge the terms, duties, or obligations of the Purchase Agreements." *Id.* at 1132. Toyota further argued that equitable estoppel applied because "Plaintiffs allege collusion and interdependent misconduct between Toyota and the Dealerships." *Id.* This Court held that even if Plaintiffs had alleged collusion between the defendant and a signatory, that still would not be enough because "the allegations of collusion are not 'inextricably bound up with the obligations imposed by the agreement containing the arbitration clause.'" *Id.* at 1133. The determinative point under both

---

[8] In setting out the second circumstance, Defendants' brief inexplicably changes the bolded "and" from *Herrera* to an "or." *See* Defs' Br. 52.

tests was that plaintiffs' allegations and claims did not depend on the terms of the Purchase Agreements.

The exact same thing is true here. Plaintiffs are not "claiming the benefits of" the Coinbase User Agreement "while simultaneously attempting to avoid the burdens that contract imposes." *Id.* at 1128. Plaintiffs' claim has nothing to do with the User Agreement. Its terms have no bearing on this case. Plaintiffs allege that Defendants unlawfully solicited unregistered securities transactions in violation of the Securities Act of 1933. They do not allege any violation of the User Agreement and "do not seek to enforce or challenge the terms, duties, or obligations" of that agreement. *Id.* at 1132. Indeed, the District Court held that Plaintiffs stated a claim for relief even though the operative complaint does not mention the User Agreement or any of its terms—making this the prototypical case in which "claims are fully viable without reference to the terms of the contract." *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x at 209. Accordingly, "equitable estoppel does not apply." *Id.*; *see also Goldman*, 173 Cal. App. 4th at 218 ("The complaints do not rely on or use any terms or obligations of the operating agreements as a foundation for their claims"); *Solana Labs*, 2024 WL 4023087, at *7 (rejecting identical argument because plaintiff's claims were not "founded in or even tangentially related to any duty, obligation, term or condition imposed by [a digital asset platform's user agreement]").

Defendants get nowhere by asserting that Plaintiffs alleged "'collusive behavior' between Defendants and Coinbase." Defs.' Br. 53; *see id.* at 53–55. For

starters, the assertion is untrue: Plaintiffs did not allege any "concerted misconduct" between Defendants and Coinbase—they have not alleged that Coinbase did anything wrong at all. In any event, as explained above, "allegations of collusive behavior by signatories and nonsignatories, *with no relationship to the terms of the underlying contract*, does not justify application of equitable estoppel to compel arbitration." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (emphasis added). Here, the supposedly collusive conduct— Defendants and Coinbase working together to list and promote COMP for sale on Coinbase—has nothing to do with the obligations of the User Agreement. 1-ER-11. Accordingly, it "does not justify application of equitable estoppel to compel arbitration." *Murphy*, 724 F.3d at 1232.

Defendants never even argue that Plaintiffs' claims are founded in or rely on the obligations imposed by the User Agreement. Instead, they try to evade that requirement by rewriting the test. Relying on snippets of one line in *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021), Defendants claim that equitable estoppel is satisfied as long as the plaintiffs' claim "'is rooted in' a 'relationship' 'governed by'" a "contract containing an arbitration agreement." Defs.' Br. 55–56 (quoting *Franklin*, 998 F.3d at 875). With this sleight of hand, Defendants try to change the test's focus from whether the claims are founded in *the contract's obligations* to whether a contract exists at all—regardless of whether the claims depend on the terms of that contract. *See* Defs.' Br. 55–59.

40

That is not the standard. As one court put it in rejecting an identical argument, "[t]his argument confuses the concept of 'claims founded in and intertwined with the agreement containing the arbitration clause' with but-for causation." *DMS Servs., LLC v. Superior Court*, 205 Cal. App. 4th 1346, 1356–57 (2012); *see also Guisinger v. Keystone RV Co.*, 2024 WL 3384211, at *1 (9th Cir. July 12, 2024) ("The California Courts of Appeal have long rejected but-for causation as the relevant standard for this."); *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 949–50 (9th Cir. 2022) ("This 'attenuated chain of reasoning' has been rejected by California courts . . . [a]nd we rejected similar arguments in *Kramer*."). Equitable estoppel requires "actual reliance on the terms of the agreement, . . . not simply on the fact that an agreement exists." *Goldman*, 173 Cal. App. 4th at 231; *see also Thrasio, LLC v. Boosted Commerce, Inc.*, 2022 WL 823644, at *1 (9th Cir. Mar. 18, 2022) ("Although Thrasio references the Operating Agreement, its claims are not dependent upon the operating agreement.").

Notwithstanding Defendants' out-of-context quotation, *Franklin* is easily distinguishable. In *Franklin*, a nurse sued a hospital for employment-law violations, but it was her agreement with a staffing agency that "set her hourly wage rate and overtime rate, . . . set the regular length of her shifts, the time her shifts started and ended, and the number of hours in her workweek." *Franklin*, 998 F.3d at 876. Accordingly, "whether [the nurse] can maintain liability against the Hospital . . . cannot be answered without reference to the Assignment Contract," and her claims

41

were "not fully viable without reference to the terms of [the Assignment Contract]." *Id.* In those circumstances, the nurse could not avoid the arbitration agreement in the Assignment Contract. Those facts are nothing like the facts here, where the court "will not need to address (much less rely on) the Coinbase User Agreement" to resolve Plaintiffs' claim. 1-ER-10–11.[9]

Defendants argue that equitable estoppel applies because Plaintiffs' "remedy [of rescission] depends on their use of Coinbase," Defs.' Br. 58, but this Court rejected the same argument in *Kramer*, deeming it irrelevant "whether the court must look to the [contract] to ascertain the requested relief." *Kramer*, 705 F.3d at 1132; *accord Solana Labs*, 2024 WL 4023087, at *8. In any case, Plaintiffs' remedy does not require looking to the Coinbase User Agreement, which predates the relevant transactions and "does not indicate the price that [Plaintiffs] paid for the [COMP] tokens." *Id.*

Finally, Defendants' equitable estoppel argument fails for an additional reason. As *Franklin* makes clear, and as Defendants admit, a nonsignatory may compel arbitration only if the "court . . . decide[s] both that (1) the plaintiff is equitably estopped from escaping the contract, and (2) the claims fall within the scope of the contract's arbitration clause." *Franklin*, 998 F.3d at 872; *see* Defs.' Br.

---

[9] The district court correctly distinguished Defendants' other cases, including *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702 (9th Cir. 2024). *See* 1-ER-12.

59 (noting requirement that the arbitration clause "encompasses their claim"). As explained above, Plaintiffs' claims do not "fall within the scope of the contract's arbitration clause" because the User Agreement's arbitration clause reaches only "DISPUTES BETWEEN YOU AND COINBASE." 2-ER-55 (underline added). The present dispute, between Plaintiffs and non-Coinbase, non-signatories, does not fall within the scope of the contract's arbitration clause.

### B. Defendants Cannot Satisfy the Correct, Non-Preempted Test for Equitable Estoppel.

Even if Defendants could satisfy California's arbitration-specific test for equitable estoppel, the decision below should still be affirmed because that test is preempted by the FAA and Defendants cannot satisfy the proper test.

The FAA requires courts to treat arbitration agreements like any other contract. *Morgan*, 596 U.S. at 418. This means that courts may not apply "bespoke" "arbitration-specific" rules. *Id.* at 417, 419. Instead, they must apply the same "generally applicable" rules to arbitration agreements that they would apply to any other contract. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022). As the Supreme Court recently clarified, this principle applies regardless of whether the arbitration-specific rule favors or disfavors arbitration: "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 596 U.S. at 418. Accordingly, when deciding whether to allow an arbitration agreement "to be enforced by or against nonparties," courts must apply "'traditional

43

principles' of state law"—not arbitration-specific ones. *Arthur Andersen*, 556 U.S. at 631.

Defendants' brief invokes an arbitration-specific form of equitable estoppel that some of California's intermediate courts have applied in arbitration cases. *See supra* Part III.A. But that arbitration-specific test is nothing like the ordinary, "traditional principles" that govern equitable estoppel under California law. Under generally applicable California law, four elements must be present to apply the doctrine of equitable estoppel, including detrimental reliance:

> (1) The party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) [the other party] must rely upon the conduct to his injury.

*Honeywell v. Workers' Comp. Appeals Bd.*, 105 P.3d 544, 550 (Cal. 2005); *see also, e.g.*, *Long Beach v. Mansell*, 476 P.2d 423, 442 (1970) ("The rule of law is clear, that, where one by his words or conduct willfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."); 30 CAL. JUR. 3D ESTOPPEL AND WAIVER § 13 ("The essential elements for the application of the doctrine of equitable estoppel include that the party claiming the estoppel detrimentally relied on the words or acts of the other party. Without reliance and

injury, equitable estoppel does not apply."). The different, arbitration-specific standard that Defendants invoke runs afoul of the Supreme Court's holding in *Morgan* and is therefore preempted.[10]

Defendants cannot satisfy multiple elements of the generally applicable test for equitable estoppel. As for the second element, there is no evidence that Plaintiffs ever "intentionally and deliberately" misled Defendants into believing they would arbitrate their claims. *Id.* To the contrary, Plaintiffs sued in federal court and litigated there for nearly two years before anyone suggested arbitration. Indeed, the only representation Plaintiffs ever made to Defendants about arbitration is that Plaintiffs "do not believe this case is suitable for reference to binding arbitration." 2-SER-349.

Defendants also cannot satisfy the third element of the traditional test for equitable estoppel, as they cannot show they were "ignorant of the true state of facts." *Honeywell*, 105 P.3d at 550. Defendants knew exactly what Plaintiffs knew: that Plaintiffs and Defendants never entered into any arbitration agreement and that Defendants are not parties to the Coinbase User Agreement.

---

[10] In *Herrera*, decided after *Morgan*, this Court applied the arbitration-specific test that Defendants invoke here. The parties in that case did not argue that any other test applied and did not raise *Morgan* or the preemption issue, and the panel did not address it. *Herrera* therefore does not bear on this Court's analysis regarding which test to apply. *See, e.g.*, *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Defendants likewise cannot show the fourth element, detrimental reliance—*i.e.*, that they changed their conduct because they were misled into believing Plaintiffs would arbitrate, and were thereby harmed. It strains credulity to suggest that Defendants, when they issued, promoted, and sold COMP tokens, were relying on (nonexistent) representations by Plaintiffs that they would arbitrate any future securities claims that arose out Defendants' unlawful securities offerings. Defendants have not identified a single thing they did differently because of a supposed belief that they could eventually invoke Coinbase's User Agreement against Plaintiffs' unregistered securities claims.

What is more, any attempt by Defendants to demonstrate detrimental reliance would directly contradict any argument that Defendants did not waive arbitration through their litigation conduct. To defeat the waiver argument in Part I, *supra*, Defendants must show that they *did not* believe they could arbitrate until Plaintiffs served their RFA responses several weeks prior. But to show detrimental reliance, Defendants must show that they *did* believe they could arbitrate, and relied to their detriment on that belief. It would be impossible for Defendants to show that they simultaneously believed and did not believe the same thing.

## CONCLUSION

The District Court's order should be affirmed.

Respectfully submitted,

Dated:  May 21, 2025

MICHAEL LIEBERMAN
JAMIE CROOKS
FAIRMARK PARTNERS, LLP
400 7th Street NW, Suite 304
Washington, DC 20004
michael@fairmarklaw.com
jamie@fairmarklaw.com

CHARLES GERSTEIN
JASON HARROW
GERSTEIN HARROW LLP
400 7th Street NW, Suite 304
Washington, DC 20004
charlie@gerstein-harrow.com
jason@gerstein-harrow.com

/s/ Nicholas N. Spear
STEVEN G. SKLAVER
OLEG ELKHUNOVICH
ROHIT D. NATH
NICHOLAS N. SPEAR
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
ssklaver@susmangodfrey.com
oelkhunovich@susmangodfrey.com
rnath@susmangodfrey.com
nspear@susmangodfrey.com

TAYLOR H. WILSON, JR.
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX 77002
twilson@susmangodfrey.com

*Attorneys for Plaintiffs-Counterclaim Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number(s)** <u>24-7243</u>

I am an attorney for Plaintiff-Appellees Amanda Houghton, Charles Douglas, and Susan Franklin.

This brief contains 11,222 words, including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief (*select only one*):

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because (*select only one*):

    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated .

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated:  May 21, 2025

*/s/ Nicholas N. Spear*
NICHOLAS N. SPEAR
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
nspear@susmangodfrey.com
*Counsel for Plaintiff-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 21, 2025, a copy of the above and foregoing was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: May 21, 2025

/s/ Nicholas N. Spear
NICHOLAS N. SPEAR
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
nspear@susmangodfrey.com
*Counsel for Plaintiff-Appellees*